**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES E. SHELTON, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| JOHN DOE ENTITY IDENTIFIED AS DEPARTMENT OF TRANSPORTATION (DOT) COMPLIANCE SERVICES | |
| Defendant. | |

**PLAINTIFF'S CLASS ACTION COMPLAINT**

Plaintiff James E. Shelton ("Mr. Shelton"), by his undersigned counsel, for this class action complaint against a John Doe entity identified as Department of Transportation (DOT) Compliance Services, as well as its present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, alleges as follows:

## I.     INTRODUCTION

1.      As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.      The Plaintiff James E. Shelton alleges that John Doe Defendant doing business and identified as Department of Transportation (DOT) Compliance Services, made unsolicited pre-recorded telemarketing calls to Mr. Shelton and others without their prior express consent.

3.      Because these calls were transmitted using technology capable of generating thousands of similar calls per day, he sues on behalf of a proposed nationwide class of other persons who received similar calls.

4.      A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## II.      PARTIES

5.    Plaintiff Shelton is an individual who resides in the Eastern District of Pennsylvania.

6.      The Defendant sued herein as John Doe Entity Identified as Department of Transportation (DOT) Compliance Services, is a corporation whose true identity is unknown at this time and identified only through an address in Federal Way, Washington and telephone numbers with Washington State area codes.

## III.      JURISDICTION AND VENUE

7.    Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

8.    Personal Jurisdiction: The Court has specific personal jurisdiction over Defendant because it directed its conduct into this District, including by calling numbers who have area codes in this District.

9. <u>Venue</u>: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—was sent into this District.

## IV.    FACTS

**A.    The TCPA Prohibits Prerecorded Calls to Cell Phones**

10.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

11.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A).

12.    The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

13.    According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14.    Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as

in the case of cellular phones), or because the numbers are assigned to services for which the called party is charged, thus shifting the cost of automated or prerecorded messages onto consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

15.     This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged for the call. *See Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *6 (E.D. Pa. July 15, 2021).

16.     "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes calls made using artificial or prerecorded voices pitching business-oriented services. *See* FCC Enforcement Advisory: Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse, 31 FCC Rcd. 1940, 1941 n.6 (2016) [hereinafter FCC Advisory].

17.     Non-consensual, non-emergency calls placed using an ATDS or an artificial or prerecorded voice violate 47 U.S.C. § 227(b)(1)(A), regardless of the purpose of the call. *Victory Phones*, 2021 WL 3007258, at *6 (rejecting claim that noncommercial survey calls were exempt and holding that "[T]he operative language of the TCPA is unambiguous. Section 227(b)(1)(A) prohibits placing artificial and prerecorded voice calls to a variety of telephone numbers."). To hold otherwise would read the words "any person" and "any call" out of the statute. *See id.*

4

B.      **Unsolicited Telemarketing to Plaintiff**

18.      Plaintiff Shelton is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

19.      Plaintiff's residential cellular telephone number is (215)-XXX-XXXX, and has been on the National Do Not Call Registry for more than a year prior to the calls at issue.

20.      Mr. Shelton uses the number for personal, residential, and household reasons.

21.      Mr. Shelton does not use the number for business reasons or business use.

22.      The number is a residential telephone line because it is not assigned to a telephone exchange service for businesses.

23.      The number is assigned to a cellular telephone service.

24.      Plaintiff Shelton never consented to receive calls from Defendant.

25.      Plaintiff Shelton never did business with the Defendant.

26.      Despite this, Plaintiff received a total of at least four automated telephone calls from Defendant's number 312-748-1271 as part of a telemarketing campaign. The calls were sent on March 11, 2024, April 10, 2024, April 14, 2024, and May 1, 2024.

27.      The messages all played the exact same, prerecorded message:

This is Jake Tyler from DOT Compliance Services. I'm calling to inform you that your US DOT account is out of compliance. This means that you may be at risk for being fined. To remain in compliance, you must complete a biennial update. This can be done by calling our office at 425-296-1616. Our specialized agents will help you through the entire process so that you don't have to worry. The deadline for completing your biennial update is past due. If you are no longer in business or no longer using your US DOT number, you must file your MCS-150 form one last time to formally deactivate your account. Again, you can do this by calling our office at 425-296-1616. We understand that compliance can be complex and we are here to assist you. If you have any questions, do not hesitate to contact us. Thank you for your cooperation.

28.     The Plaintiff then called the number 425-296-1616 back to ascertain the identity of the caller and for no other reason.

29.     As a result of the call, the Plaintiff received an emailed invoice for $199.00 for a US DOT reactivation. The email listed "DEPT OF TRANSPORTATION COMPLIANCE SERVICES" as the merchant and provided a phone number of 253-527-4113:

# DEPT OF TRANSPORTATION COMPLIANCE SERVICES

1600-B SW Dash Point Rd #2167, Federal Way, WA 98023

(253) 528-4113

30.     The "description" field of the invoice sent to the Plaintiff listed yet another telephone number for the Defendant, 253-336-0090:

**DESCRIPTION:**

A Biennial Update or deactivation is required by FMCSA in order to stay in compliance. This applies to all motor carriers with a USDOT account. It is recommended that you pay before your due date to avoid being put out of service or potential fines. Please pay invoice to expedite your MCS-150 form and complete the process. For questions, contact us at (253) 336-0090.

31.     Thereafter, counsel for the Plaintiff undertook an investigation to ascertain the identity of the caller.

32.     However, these efforts were substantially frustrated and reveal a sophisticated illegal actor intent on concealing their identity.

33.     The names, either complete or partial, for "DOT Compliance Services," "Department of Transportation Compliance Services," and "Dept of Transportation Compliance

Services," are not registered as legitimate businesses or fictitious business names in Illinois, Washington, or Pennsylvania.

34.     There are confusingly similar companies, such as DOT Compliance Group, LLC, but none which have information exactly matching the Defendant.

35.     For example, the Plaintiff has no fewer than four telephone numbers for the Defendant, but they provide no insight because there is no centralized way to lookup the owner of a telephone number. The only way to identify the number's owner is through a subpoena to the number's carrier, and any downstream carriers identified. Three of the numbers, 312-748-1271, 253-527-4113, and 253-336-0090, are registered with a carrier named Onvoy, LLC. One of the numbers, 425-296-1616, is registered with a carrier named Level 3 Communications, LLC.

36.     Although the phone number 253-528-4113 is listed on a website called https://dotcomplianceservices.org/, the owner of that website has concealed their identity by running the domain registration through a fictitious domain registration service located in Iceland with a United States-based subsidiary. The only way to reveal the true owner is via subpoena or other lawful process to the domain registrar or Whois privacy service.

37.     Furthermore, the address on the invoice is an anonymous mailbox rental service called Mail, Copy, & More, located in Federal Way, WA and the mailbox number is 2167. The only way to reveal its true owner is via subpoena or other lawful process to the mailbox service.

38.     The invoice was sent and payments were collected through a third-party merchant services company called Authorize.net. Authorize.net is one of the world's largest payment processing services companies but will not publicly disclose merchant identifying information without a subpoena or other lawful process.

39.     Simply put, despite exhaustive searching, there is no way to identify the John Doe entity, including to effectuate service of process, without the issuance of subpoenas to the aforementioned entities.

40.     Therefore, concurrently with the filing of this Complaint, the Plaintiff will propound a motion to permit issuance of subpoenas to the aforementioned entities prior to a Rule 26(f) conference.

41.     The aforementioned calls to the Plaintiff were unwanted.

42.     The calls were nonconsensual encounters.

43.     All the calls were made in an attempt to sell the Plaintiff renewal services and document preparation services for a trucking license.

44.     Plaintiff does not own a truck.

45.     Plaintiff's privacy has been violated by the above-described telemarketing messages.

46.     Plaintiff never provided his consent or requested these messages.

47.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## V.    CLASS ACTION ALLEGATIONS

48.     <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the Class defined as follows:

**Robocall Class:** Plaintiff and all persons within the United States: (1) to whose cellular telephone numbers, specialized mobile radio numbers, radio common carrier numbers, or

numbers for which they were charged for the call (2) Defendant, or a third party on their behalf, placed a call using artificial or pre-record messages (3) within the four years prior to the filing of the Complaint.

49.     Excluded from the Class are counsel, Defendant, any entities in which Defendant has a controlling interest, Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

50.     The Class, as defined above, is identifiable through telephone records and telephone number databases.

51.     The potential members of the Class likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

52.     Individual joinder of these persons is impracticable.

53.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

54.     Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class as he has no interests that conflict with any of the class members.

55.     Plaintiff and all members of the Class have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied them from receiving legitimate communications.

56.     This class action complaint seeks injunctive relief and money damages.

57.     There are numerous questions of law and fact common to Plaintiff and members of the Class. These common questions of law and fact include, but are not limited to, the following:

(ii)     Whether Defendant used an artificial or pre-recorded voices to make the calls;

(iii)    whether Defendant made calls to Plaintiff and members of the Class without first

obtaining prior express written consent to make the calls; and

(iv)    whether members of the Class are entitled to treble damages based on the

willfulness of Defendant's conduct.

58.    Plaintiff's claims are typical of the claims of the Class, as they arise out of the

same common course of conduct by Defendant and are based on the same legal and remedial

theories.

59.    Plaintiff is an adequate representative of the Class because his interests do not

conflict with the interests of the Class, he will fairly and adequately protect the interests of the

Class, and he is represented by counsel skilled and experienced in class actions, including TCPA

class actions.

60.    Common questions of law and fact predominate over questions affecting only

individual class members, and a class action is the superior method for fair and efficient

adjudication of the controversy. The only individual question concerns identification of class

members, which will be ascertainable from records maintained by Defendant and/or its agents.

61.    A class action is the superior method for the fair and efficient adjudication of this

controversy. Class-wide relief is essential to compel Defendant to comply with the TCPA. The

interests of individual members of the Class in individually controlling the prosecution of

separate claims against Defendant are small because the damages in an individual action for

violation of the TCPA are small. Management of these claims is likely to present significantly

more difficulties than are presented in many class claims. Class treatment is superior to multiple

individual suits or piecemeal litigation because it conserves judicial resources, promotes

consistency and efficiency of adjudication, provides a forum for small claimants, and deters

illegal activities. There will be no significant difficulty in the management of this case as a class action.

62.     Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227(b))**
**(On Behalf of Plaintiff and the Robocall Class)**

63.     Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

64.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with an artificial and/or pre-recorded voice message to protected telephone numbers.

65.     The Defendant's violations were negligent, willful, or knowing.

66.     As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

67.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on

Defendant's behalf from making pre-recorded calls, except for emergency purposes, to any protected telephone number in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.    Certification of the proposed Class;

B.    Appointment of Plaintiff as representative of the Class;

C.    Appointment of the undersigned counsel as counsel for the Class;

D.    An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

E.    An award to Plaintiff and the Class of damages, as allowed by law; and

F.    Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VI.          DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.


RESPECTFULLY SUBMITTED AND DATED this May 20, 2024.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
E.D. Pa. Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
(*Pro Hac Vice* Forthcoming)
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100


*Attorneys for Plaintiff and the Proposed Class*