## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES E. SHELTON | Case No. **2:24-CV-02140-WB** |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| DOT Compliance Services, LLC | |
| and | |
| Christian Perales | |
| Defendants. | |

### PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff James E. Shelton ("Mr. Shelton") for this complaint against DOT Compliance Services, LLC, its owner Christian Perales, as well as its present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, alleges as follows:

### I.    INTRODUCTION

1.    As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.    However, the TCPA doesn't just restrict robocalls.

3.      Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' id. § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *Id.* § 2(9).

4.      "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. Id…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA

affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

5.      The Plaintiff James E. Shelton alleges that DOT Compliance Services, LLC, directed by its owner Chrisitan Perales, made unsolicited pre-recorded telemarketing calls to Mr. Shelton's number on the National Do Not Call Registry.

## II.    PARTIES

6.   Plaintiff Shelton is an individual who resides in the Eastern District of Pennsylvania.

7.   Defendant, which was formerly sued herein as John Doe Entity Identified as Department of Transportation (DOT) Compliance Services, and which has now been identified as DOT Compliance Services, LLC is a Texas corporation.

8.   Defendant Christian Perales is the owner of DOT Compliance Services, LLC as well as the individual listed on the telephone records for the telephone calls the Plaintiff received.

## III.    JURISDICTION AND VENUE

9.   Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental jurisdiction over the state law telemarketing claims.

10. Personal Jurisdiction: The Court has specific personal jurisdiction over Defendants because they directed their conduct into this District, including by calling numbers which have area codes in this District.

11. Venue: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—was sent into this District.

## IV.    FACTS

**A.    The TCPA Prohibits Prerecorded Calls to Cell Phones**

12.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

13.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A).

14.    The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

15.    According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

16.    Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), or because the numbers are assigned to services for which the called party is charged, thus shifting the cost of automated or prerecorded messages onto

consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

17.     This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged for the call. *See Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *6 (E.D. Pa. July 15, 2021).

18.     "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes calls made using artificial or prerecorded voices pitching business-oriented services. *See* FCC Enforcement Advisory: Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse, 31 FCC Rcd. 1940, 1941 n.6 (2016) [hereinafter FCC Advisory].

19.     Non-consensual, non-emergency calls placed using an ATDS or an artificial or prerecorded voice violate 47 U.S.C. § 227(b)(1)(A), regardless of the purpose of the call. *Victory Phones*, 2021 WL 3007258, at *6 (rejecting claim that noncommercial survey calls were exempt and holding that "[T]he operative language of the TCPA is unambiguous. Section 227(b)(1)(A) prohibits placing artificial and prerecorded voice calls to a variety of telephone numbers."). To hold otherwise would read the words "any person" and "any call" out of the statute. *See id.*

**B.     The TCPA Prohibits Calls to Numbers on The National Do Not Call Registry**

20.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

21.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

22.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**C.      Unsolicited Telemarketing to Plaintiff**

23.     Plaintiff Shelton is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

24.     Plaintiff's residential cellular telephone number is (215)-XXX-XXXX, and has been on the National Do Not Call Registry for more than a year prior to the calls at issue.

25.     Mr. Shelton uses the number for personal, residential, and household reasons.

26.     Mr. Shelton does not use the number for business reasons or business use.

27.     The number is a residential telephone line because it is not assigned to a telephone exchange service for businesses.

28.     The number is assigned to a cellular telephone service.

29.     Plaintiff Shelton never consented to receive calls from Defendants.

30.     Plaintiff Shelton never did business with the Defendants.

31.     Defendants are not registered as telemarketers with the Attorney General of

Pennsylvania.

32.     Despite this, Plaintiff received a total of at least four automated telephone calls

from Defendants' number 312-748-1271 as part of a telemarketing campaign. The calls were

sent on March 11, 2024, April 10, 2024, April 14, 2024, and May 1, 2024.

33.     The messages all played the exact same, prerecorded message:

> This is Jake Tyler from DOT Compliance Services. I'm calling to inform you that your
> US DOT account is out of compliance. This means that you may be at risk for being
> fined. To remain in compliance, you must complete a biennial update. This can be done
> by calling our office at 425-296-1616. Our specialized agents will help you through the
> entire process so that you don't have to worry. The deadline for completing your biennial
> update is past due. If you are no longer in business or no longer using your US DOT
> number, you must file your MCS-150 form one last time to formally deactivate your
> account. Again, you can do this by calling our office at 425-296-1616. We understand
> that compliance can be complex and we are here to assist you. If you have any questions,
> do not hesitate to contact us. Thank you for your cooperation.

34.     In addition, the calls were placed using an ATDS.

35.     The calls were placed using an ATDS because the Plaintiff's number was itself

randomly or sequentially generated, and the Defendants were not calling from a list, because the

Plaintiff does not even have a US DOT account. Moreover, it would be illogical to call a number

with a generic prerecorded message if it was dialed from a list, because in that case the

Defendants would know who they were calling.

36.     Defendants send out these call blasts *en masse* to telephone numbers throughout

the area, hoping they reach someone interested in their compliance services.

37.     The Plaintiff then called the number 425-296-1616 back to ascertain the identity

of the caller and for no other reason.

38.    As a result of the call, the Plaintiff received an emailed invoice for $199.00 for a US DOT reactivation. The email listed "DEPT OF TRANSPORTATION COMPLIANCE SERVICES" as the merchant and provided a phone number of 253-527-4113:

# DEPT OF TRANSPORTATION COMPLIANCE SERVICES

1600-B SW Dash Point Rd #2167, Federal Way, WA 98023

(253) 528-4113

39.    The "description" field of the invoice sent to the Plaintiff listed yet another telephone number for the Defendants, 253-336-0090:

**DESCRIPTION:**

A Biennial Update or deactivation is required by FMCSA in order to stay in compliance. This applies to all motor carriers with a USDOT account. It is recommended that you pay before your due date to avoid being put out of service or potential fines. Please pay invoice to expedite your MCS-150 form and complete the process. For questions, contact us at (253) 336-0090.

40.    Thereafter, counsel for the Plaintiff undertook an investigation to ascertain the identity of the caller.

41.    However, these efforts were substantially frustrated and reveal a sophisticated illegal actor intent on concealing their identity.

42.    The names, either complete or partial, for "DOT Compliance Services," "Department of Transportation Compliance Services," and "Dept of Transportation Compliance Services," are not registered as legitimate businesses or fictitious business names in Illinois, Washington, or Pennsylvania.

43.     A subsequent court-authorized subpoena to the telephone providers for each of the numbers listed herein revealed that each of the numbers were registered in the name of DOT Compliance Services, LLC. Furthermore, the telephone number 312-748-1271, the telephone number which sent the pre-recorded calls, is also registered in Defendant Perales' name personally.

44.     Defendant Perales personally registered, programmed, and paid for the pre-recorded message platform, Commio, to make the calls complained of herein. The telephone number from which the illegal prerecorded calls originated was registered in his own name.

45.     Upon information and belief, Defendant Perales personally voiced, uploaded, and programmed the use of the prerecorded messages to the telephone system, which included the Plaintiff's number.

46.     Defendant Perales may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, inter alia: "[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*." 47 U.S.C. § 217 (emphasis added).

47.     Perales personally directed the TCPA-violative conduct at issue because he personally programmed and, upon information and belief, recorded the messages for the system which sent the prerecorded message which violated the TCPA, attempted to sell the services being advertised, and personally paid for, registered, and programmed the requisite systems required to make the calls.

48.    Perales was also the individual responsible for drafting, setting, implementing, and controlling DOT's marketing strategy, including the use of illegal automated prerecorded calls and the scripting for such calls, as well as its strategy of obsfucating corporate identity which necessitated the issuance of multiple subpoenas.

49.    The foregoing facts demonstrate that Perales had direct, personal knowledge of and participation in the conduct and course of conduct complained of which violated the TCPA.

50.    Based on the foregoing facts, it is evident that Defendants do not maintain an internal Do Not Call List or internal Do Not Call policy because otherwise they would not have contacted the Plaintiff, whose number is on those lists, with highly illegal prerecorded messages, and then taken steps to hide their identity.

51.    The aforementioned calls to the Plaintiff were unwanted.

52.    The calls were nonconsensual encounters.

53.    All the calls were made in an attempt to sell the Plaintiff renewal services and document preparation services for a trucking license.

54.    Plaintiff does not own a truck.

55.    Plaintiff's privacy has been violated by the above-described telemarketing messages.

56.    Plaintiff never provided his consent or requested these messages.

57.    Plaintiff has been harmed by the acts of Defendants because his privacy has been violated and he was annoyed and harassed. In addition, the calls occupied his telephone line, storage space, and bandwidth, rendering it unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## LEGAL CLAIMS

### Count One:
### Violation of the TCPA's Prohibition Against Automated Calling
### Via Pre-Recorded Message

58.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

59.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending calls, except for emergency purposes, to the telephone number of Plaintiff using a prerecorded voice.

60.     As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff is entitled to an award of $500 in damages for each and every call made to his telephone number for which he is charged for the call using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

61.     Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls or sending messages, except for emergency purposes, to any number using an artificial or prerecorded voice in the future.

62.     The Defendants' violations were willful and/or knowing.

### Count Two:
### Violation of the TCPA's Prohibition Against Automated Calling
### With an Automatic Telephone Dialing System (ATDS)

63.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

64.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the telephone number(s) of Plaintiff using an ATDS.

65.     As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff is entitled to an award of $500 in damages for each and every call made to his telephone number for which he is charged for the call using an ATDS in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

66.     Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any number using an artificial or prerecorded voice in the future.

67.     The Defendants' violations were wilful and/or knowing.

## Count Three:
## Violation of the Pennsylvania Telemarketer Registration Act
## 73 Pa. Cons. Stat. § 2241

68.     By placing telemarketing calls to the Plaintiff without registering as telemarketers under Pennsylvania law, Defendants, jointly and severally, violated 73 Pa. Cons. Stat. § 2243. Moreover, by failing to identify themselves in the messages, Defendants, jointly and severally, violated 73 Pa. Cons. Stat. § 2245.1.

69.     This constitutes two violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law per call. 73 Pa. Cons. Stat. § 2246(a).

70.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the Pennsylvania Telemarketer Registration Act (PTRA), 73 Pa. Cons. Stat. § 2241, including by making calls to Plaintiff's number, on the Pennsylvania Do-Not-Call registry, without registration.

71.     As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the PTRA, 73 Pa. Cons. Stat. § 2241, Plaintiff is entitled to an award of $300 in damages for each and every call made to his telephone number in violation of the statute, pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201. *See* 73 Pa. Cons. Stat. § 2246(a).

72.     Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the PTRA in the future.

**Count Four:**
**Violation of the TCPA's Implementing Regulations**
**Codified at 47 C.F.R. § 64.1200**

73.     By placing at least four telemarketing calls to the Plaintiff, whose number is on the Do-Not-Call registry, failing to have a written Do-Not-Call policy, and failing to maintain the Plaintiff on their Do-Not-Call list, Defendants, jointly and severally, violated 47 U.S.C. § 227(c)(5) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(c) and (d).

74.     This amounts to twelve violations since Defendants committed three violations per call. The first violation is calling a number on the national Do-Not-Call registry. 47 C.F.R. § 64.1200(c)(2). The second violation is by calling Plaintiff without having a Do-Not-Call policy

in place. 47 C.F.R. § 64.1200(d)(1). The third violation is by calling Plaintiff without maintaining the Plaintiff on their internal Do-Not-Call list. 47 C.F.R. § 64.1200(d)(6).

75.    The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute at least twelve violations of the TCPA, 47 U.S.C. § 227(c), codified at 47 C.F.R. § 64.1200, by, *inter alia*, refusing to scrub against the National Do-Not-Call registry, refusing to maintain Mr. Shelton's number on an internal Do-Not-Call list, and failing to have a Do-Not-Call policy.

76.    As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the TCPA, 47 U.S.C. § 227(c), Plaintiff is entitled to an award of $500 in damages for each and every call and violation made to his telephone number in violation of the TCPA's implementing regulations codified at 47 C.F.R. § 64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

77.    Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the TCPA, 47 U.S.C. § 227(c), by making calls in violation of any of the TCPA's implementing regulations in the future.

78.    The Defendants' violations were knowing and/or willful. Accordingly, the Plaintiff seeks up to treble damages of the $500 per violation award, as provided in 47 U.S.C. § 227(b)(3)(B).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

A.    Injunctive relief prohibiting Defendants from calling telephone numbers using an artificial or prerecorded voice and/or ATDS.

B.      Because of Defendants' violations of the TCPA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3) or 47 U.S.C. § 227(c)(5).

C.      Because of Defendants' violations of the PTRA, Plaintiff Shelton seeks for himself $300 in damages for each violation, pursuant to 73 Pa. Cons. Stat. § 201-9.2(a).

D.      Such other relief as the Court deems just and proper.

## V.          DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this January 7, 2025.

*/s/ James Everett Shelton*
James Everett Shelton
316 Covered Bridge Road
King of Prussia, Pennsylvania 19406
Phone: 484-626-3942
jeshelton595@gmail.com